### Interstate Discount Corporation v. Eppley

298

*William H. Neff, Jr.,* and *Stock and Leader,* for plaintiff.

*Daniel W. Shoemaker,* for defendants.

SHADLE, J., July 20, 1970.—This is an action of replevin without bond by which plaintiff seeks to recover the value of an automobile on which it holds a chattel mortgage from defendants whose decedent is alleged to have seized and converted the vehicle. After several pretrial conferences, the parties filed a stipulation of facts, and the case was submitted to the court in the nature of a case stated. Plaintiff filed a motion for summary judgment under Pa. R. C. P. 1035, argument was had before the court en banc, and this opinion and order are filed on its behalf.

On April 21, 1965, Cadillac Motor Car Division of General Motors Corporation (Cadillac) sold and delivered the vehicle in question to Scott Smith Cadillac Company (Smith), and delivered to it a manufactur-

er's statement of origin, which is the original title document preceding a certificate of title. On April 24, 1965, apparently in anticipation of acquiring the car from Scott, Sorantino Motors, Inc. (Sorantino), located in New Jersey, delivered to John Norris an invoice representing a sale to him of the car. John Norris was a registered dealer of motor vehicles with his place of business in Maryland, operating under the name of Fallston Motors. To complete this transaction, on April 26, 1965, Smith executed an assignment of the statement of origin to Sorantino, and on May 5, 1965, Sorantino executed a second assignment of the statement of origin to Norris and delivered it to him.

Meanwhile, on April 26, 1965, Norris executed and delivered to plaintiff a chattel mortgage and financing statement for $5,500 covering the car in question. Plaintiff is a lending institution with its place of business in Maryland. The chattel mortgage provided that the car was and should remain at Norris' address in Maryland, and that he should neither sell nor encumber it.

On either May 5, 6 or 7, 1965, Norris then took both the assigned statement of origin and the car to defendants' decedent who operated under the name of Epp's Used Cars in York, Pa., and delivered the statement and car to him. On May 7, 1965, Norris and Eppley executed a Pennsylvania motor vehicle installment sale contract, whereby Eppley, as seller, purported to sell the car to Norris, as buyer, for $5,500 plus finance charges, payable in installments. On May 10, 1965, Eppley assigned the contract to a local bank, and on the same date redelivered possession of the car to Norris.

On May 19, 1965, plaintiff filed its April 26, 1965, financing statement reflecting its loan and chattel

mortgage in the proper office in the proper county in Maryland.

On June 24, 1965, Smith, the first purchaser of the vehicle from the manufacturer, filed with Cadillac an application for a duplicate statement of origin for the same vehicle, alleging that the original statement had not been assigned, the car had not been sold or encumbered, and that the original statement had been lost. Such a duplicate statement was issued by Cadillac to Smith on June 28, 1965, and on July 3, 1965, Smith again assigned this statement to Sorantino, which, on July 6, 1965, executed a second assignment of it in blank. On August 10, 1965, another representative of Fallston Motors (Norris' trade name) executed a reassignment of a certificate of title to a motor vehicle for the car in question, a document apparently used to obtain a conventional certificate of title, and delivered it to plaintiff. The reassignment was left blank as to the name and address of the purchaser and stated no liens or encumbrances as existing on the vehicle.

Norris died on August 11, 1965. On August 15, 1965, Eppley took possession of the car at Norris' Maryland residence, and transported it to Eppley's place of business in York. On or about August 18, 1965, the same representative of Norris' Fallston Motors previously referred to delivered to plaintiff the duplicate statement of origin which had been obtained from the manufacturer. The same date, the bank in York to which Eppley had assigned the installment sale contract sent to Norris at Fallston Motors a notice of repossession for nonpayment. On August 24, 1965, plaintiff notified the bank of its claim represented by the chattel mortgage on the car. On October 26, 1965, Eppley executed an application for a Pennsylvania certificate of title to the car, and subsequently sold it to a third party. Plain-

tiff by this action seeks to recover the amount of its loss of $5,500 from Eppley's personal representative, he having since died.

Plaintiff acquired a security interest in the car under the Uniform Commercial Code of April 6, 1953, P. L. 3, as amended. If plaintiff's loan was made to enable Norris to purchase the car, as it presumably was, plaintiff's chattel mortgage was a purchase money security interest under section 9-107(b) of the code, 12A PS §9-107. In any event, the mortgage attached as a conventional security interest when the parties by the mortgage so agreed, the loan was made, and Norris purchased the car: Code, sec. 9-204(1), 12A PS §9-204.

The question then arises as to the validity of plaintiff's security interest as against the transaction between Norris and Eppley regarding the car. This depends on whether that episode constituted the creation of a security interest in Eppley, or a sale to him.

If the Norris-Eppley transaction constituted a sale by the former to the latter, followed by an installment contract resale back to Norris, then the validity thereof as against plaintiff's security interest depends on whether such sale was bona fide. Section 2-402(2) of the code, 12A PS §2-402, enables a creditor (plaintiff) of the seller (Norris) to treat a sale as void if as against the creditor retention of possession by the seller is fraudulent.

We do not consider the delivery of the statement of origin and of possession of a brand new car to a person who finances and deals in cars for a period of only three to five days, immediately followed by a purported installment resale back to the same party and redelivery of possession to him, to be a bona fide actual sale at all. It was an obvious attempt by Norris to obtain financing and create a security interest in Eppley contrary to the provisions of the

code. Furthermore, since Norris had covenanted with plaintiff in its chattel mortgage to keep the car in Maryland and neither sell nor encumber it, his violation thereof rendered his retention of possession, personally or through Eppley, fraudulent and entitled plaintiff to treat the purported sale as void under section 2-402(2) of the code, supra. Compare Clark v. Beltz, 179 Pa. Superior Ct. 456 (1955).

Since the transaction between Norris and Eppley was not valid as against plaintiff as a sale, there remains the question of whether Eppley thereby acquired a valid security interest. If he did, the issue becomes one of priority of conflicting security interests. Under section 9-312(5)(b) of the code, 12A PS §9-312, such priority is determined by the order in which they were perfected.

Under section 9-302 of the code, 12A PS §9-302, plaintiff's security interest had to be filed to become perfected. Under section 9-103(2) of the code, 12A PS §9-103, the law of Maryland governs as to the validity and perfection of plaintiff's security interest, since the chief place of business of Norris was located there. Under the version of section 9-401(1)(b) of the code which was adopted by Maryland, article 95B, Md. Stats. Anno., and which differs from the Uniform Code, the place of filing was the office of the clerk of the circuit court of the county of the debtor's chief place of business.

Plaintiff did eventually file its security interest in the proper place, but not until May 19, 1965. The transaction by which Eppley acquired a security interest from Norris preceded this, happening between May 5 and May 10, 1965. Furthermore, Eppley perfected his security interest between these same dates by taking possession of the car, which, under section 9-305 of the code, 12A PS §9-305, is a means of per-

fection. As of this date, therefore, Eppley's security interest took priority over that of plaintiff.

However, section 9-305 further provides that perfection by possession continues only so long as the secured party retains possession. Here, Eppley restored possession of the car to Norris on May 10, 1965, thereby losing perfection of his interest. Consequently, when plaintiff perfected its security interest by proper filing on May 19, 1965, it acquired priority over Eppley. This perfection and priority remained through the time Eppley and/or his assignee repossessed the car. Accordingly, plaintiff is entitled to recover the amount of its claim from Eppley's estate, he having taken the car subject to plaintiff's interest.

## ORDER

And now, to wit, July 20, 1970, plaintiff's motion for summary judgment is granted, and judgment is hereby entered in favor of plaintiff and against defendants in the amount of $5,500, with costs of suit. An exception is noted for defendants.